# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

**RYAN RUSSELL BURGESS**,

                                    Petitioner,

     v.

**LLOYD STOUT, Parole Unit Supervisor**,

                                    Respondent.

No. 2:04-CV-02222-AK

**ORDER DENYING HABEAS PETITION**

        Based on the testimony of a police informant, a jury convicted Ryan

Burgess of possessing marijuana for sale and selling marijuana on two separate

occasions.  The jury also convicted Burgess of possessing marijuana for sale on a

third occasion after law enforcement officers executed search warrants on two

properties owned by Burgess and found large amounts of marijuana at each.

Burgess now seeks habeas relief, arguing that his trial and appellate counsel

rendered unconstitutionally deficient assistance.

## Background

        Agent Phil Johnston sent Gordon Staser—a police informant—on two

"controlled buys" to purchase marijuana from Burgess at his home.  On each

occasion, Agent Johnston used a standard procedure where he would search Staser,

give him money to purchase the drugs, have officers watch him enter the home and

wait for him return with marijuana.  Agent Johnston decided not to have Staser

wear a wire because he believed Burgess might be able to detect it.

Based on these purchases, law enforcement officers obtained a search

warrant and searched Burgess's home.  During the search, they found video

cameras, a police scanner, triple-beam scales, $2,500 in cash, numerous firearms

and an ice-chest containing 114.7 grams of marijuana.  They also found a map

highlighting a path from Burgess's home to the Wildwood area of California.

Officers subsequently obtained a search warrant for a property Burgess co-owned

in Wildwood.  Inside a trailer on the property, officers discovered 409 marijuana

plants and a plastic bag containing 119 grams of marijuana.  Burgess's fingerprints

were on two light ballasts and one grow light found in the trailer.

At trial, Burgess had an explanation for everything.  He called a friend who

testified that the map had been marked up to plan for a vacation.  Another friend

testified that Burgess inherited the gun collection as part of Burgess's father's

estate.  A third friend testified that the marijuana found at his home was hers, and

that Burgess was merely holding it for her.  A fourth friend testified that on the

date that Burgess allegedly sold Staser marijuana, Burgess was helping him move

all day.  Yet a fifth friend testified that, on the date of the second controlled buy,

Burgess was helping him work on his car all day at his house.  This friend also

testified that Burgess installed the video cameras the officers found at his house to

watch his children play outside.  Burgess called Staser's brother to testify that

Staser is known as "a thief and a liar."  Burgess testified that he's never sold

marijuana and that his fingerprints got on the lights when he helped Wilkey, the

co-owner of the Wildwood property, move in.

      The jury convicted Burgess of three counts of possession of marijuana for

sale under California Health and Safety Code § 11359, two counts of sale of

marijuana under California Health and Safety Code § 11360(a) and one count of

possession of more than 28.5 grams of marijuana under California Health and

Safety Code § 11357(c), but did not find the special enhancement for being armed

in the commission of a felony to be true.[1]  The court sentenced Burgess to state

prison for four years and eight months.

---

[1]The jury also convicted Burgess of conspiracy to possess marijuana for sale and cultivate marijuana in Tehama County, but the court granted a new trial on this count because there was insufficient evidence that an overt act occurred in Tehama County, since the growing operation was located at the Wildwood property in Trinity County.

Burgess exhausted his direct appeals.  He then filed a petition for state collateral review, which the superior court summarily denied because: (1) the statement of "facts" was not by declaration; (2) the petition was "largely unintelligible" under In re Swain, 34 Cal. 2d 300, 302 (1949); (3) many of Burgess's claims would be "an appropriate subject for appeal and not a Writ of Habeas Corpus"; and (4) Burgess failed to meet the criteria to support a claim of "incompetency of counsel."  The California Court of Appeal and California Supreme Court summarily denied Burgess's petition.

## Analysis

This court has jurisdiction to consider a petition for writ of habeas corpus under 28 U.S.C. § 2254.  "On habeas review, we look through unexplained state court decisions . . . to the last reasoned state court decision to address the claim at issue."  Medley v. Runnels, 506 F.3d 857, 862 (9th Cir. 2007) (en banc).  Here, Burgess has exhausted his claims, despite the state court's citation to In re Swain, because after independently reviewing the petition, the court finds that Burgess has "fairly presented his federal claims to the Supreme Court of California."  Kim v. Villalobos, 799 F.2d 1317, 1320 (9th Cir. 1986).  Further, this court is not precluded from reviewing Burgess's petition on procedural grounds because the

state court denied his petition "both on the merits <u>and</u> by applying the state's procedural bar rule." <u>Loveland</u> v. <u>Hatcher</u>, 231 F.3d 640, 643 (9th Cir. 2000).

A district court may entertain a petition for a writ of habeas corpus challenging a state court conviction "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." <u>Bell</u> v. <u>Cone</u>, 535 U.S. 685, 693 (2002). Under AEDPA, a habeas writ will not issue unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d).

Should the court not find a sufficient basis for granting his petition on this record, Burgess requests an evidentiary hearing on his claims. AEDPA "now substantially restricts the district court's discretion to grant an evidentiary hearing." <u>Baja</u> v. <u>Ducharme</u>, 187 F.3d 1075, 1077 (9th Cir. 1999). When presented with a request for an evidentiary hearing, the court "must determine

whether a factual basis exists in the record to support the petitioner's claim." Id. at

1078.  Even before AEDPA, "[a]n evidentiary hearing [was] not required on

allegations that are 'conclusory and wholly devoid of specifics.'" Campbell v.

Wood, 18 F.3d 662, 679 (9th Cir. 1994) (en banc) (quoting Boehme v. Maxwell,

423 F.2d 1056, 1058 (9th Cir. 1970)); see also Bragg v. Galaza, 242 F.3d 1082,

1089–90 (9th Cir. 2001).  Nor is an evidentiary hearing required on issues that can

be resolved by reference to the state court record.  See Totten v. Merkle, 137 F.3d

1172, 1176 (9th Cir. 1998).

Burgess claims he was denied effective assistance of counsel because his

attorneys (1) failed to challenge the search warrants; (2) failed to raise  vindictive

prosecution and due process claims; and (3) failed to investigate and raise a

marijuana care provider defense.  To succeed on an ineffective assistance of

counsel claim, "[p]etitioner must establish both (1) that counsel's performance was

so deficient that it fell below an 'objective standard of reasonableness' and (2) that

the deficient performance rendered the results of his trial unreliable or

fundamentally unfair." Cox v. Ayers, 613 F.3d 883, 892–93 (9th Cir. 2010)

(quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)).  While "[j]udicial

scrutiny of counsel's performance must [always] be highly deferential," Wong v.

Belmontes, 130 S. Ct. 383, 384–85 (per curiam) (second alteration added), where

AEDPA applies we exercise "doubly deferential judicial review." <u>Knowles</u> v.

<u>Mirzayance</u>, 129 S. Ct. 1411, 1420 (2009).

    1.   <u>Failure To Challenge Search Warrants</u>

To show counsel was ineffective for failing to file a motion to suppress, the

"the underlying claim—the claim purportedly requiring suppression—must be

'meritorious.'" <u>Moore</u> v. <u>Czerniak</u>, 574 F.3d 1092, 1101 (9th Cir. 2009) (quoting

<u>Kimmelman</u> v. <u>Morrison</u>, 477 U.S. 365, 375 (1986)).  But "a good Fourth

Amendment claim alone will not earn a prisoner federal habeas relief."

<u>Kimmelman</u>, 477 U.S. at 382.  Rather, to establish deficient performance, "the

habeas petitioner must show that counsel's failure to file the meritorious motion to

suppress 'fell below an objective standard of reasonableness.'" <u>Moore</u>, 574 F.3d

at 1101.

    a.  <u>The October 12 Search Warrant</u>

Burgess claims that his attorneys were ineffective for failing "to challenge

the search warrants as being the product of police corruption and vindictive

prosecution."  He claims that there is a "possibility that Agent Johnston might

have written the affidavit for both warrants [at the same time]" because the

statement of probable cause attached to the first warrant contained facts that

transpired after the search occurred.  He claims that the statement was "altered by

Agent Johnston [because he] could not speak on event[s] that might have taken

place . . . approximately seven days before they take place."

It appears that the statement of probable cause attached to the first search

warrant is the one supporting the second one, as the last paragraph requests a

search warrant for the trailer "in the Wildwood are[a] of Trinity County."  In his

traverse, Burgess explains that he never received the October 12 probable cause

statement, and that "after numerous request[s] by Petitioner and counsel," he

received a probable cause statement for the wrong search.  Burgess alleges that his

attorneys agreed to challenge the warrant, but then inexplicably failed to raise the

issue before the court.  He also alleges that he discussed bringing an

ineffectiveness claim on this ground with his appellate counsel, but she also failed

to do so.

The state acknowledges that Burgess has the wrong statement of probable

cause, but claims that it "has not found a copy of the Statement of Probable Cause

for the October 12 search warrant elsewhere in the petition for writ of habeas

corpus or in the appellate record."  Nor could it; the statement of probable cause

was sealed, likely to protect the identity of the confidential informant.

Burgess's argument boils down to whether counsel's decision not to make a motion to unseal "fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688.  Under the circumstances, it did not.  Counsel knew that there existed probable cause for the October 12 search based on the two controlled purchases by Gordon Staser.  Knowing that probable cause existed, counsel could have moved to have the affidavit unsealed in hopes that the agent made a mistake.  But Burgess's attorneys knew this was unlikely, as they had in their possession the thorough statement of probable cause for the October 19 warrant, which was written by the same affiant, based largely on the same facts, only a week after the first affidavit was made.  Thus, counsel could have made a reasonable decision to devote its investigative resources elsewhere, and Burgess has not shown that this decision was objectively unreasonable.  <u>See</u> <u>id.</u> at 691 ("[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.").

Burgess further alleges that his attorneys should have challenged the search warrant as "not timely executed."  "The test for judging the timeliness of a search warrant is whether there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises."  <u>United States</u> v. <u>Gann</u>, 732 F.2d 714, 722 (9th Cir. 1984).  Because only a week passed

page 10

between the signing of the search warrant and the search itself, the information

contained in the warrant was not unconstitutionally "stale." United States v.

Collins, 559 F.2d 561, 564 (9th Cir. 1977) (approving six-week delay).


     b.  The October 19 Search Warrant

Burgess also claims counsel was ineffective for failing to challenge the

October 19 search warrant for the Wildwood property.[2]  Burgess claims that Agent

Johnston's "request for the search warrant was based on . . . information gathered

through a non-reliable confidential informant name[d] Gordon Staser."  He

complains that there was no background check and that "Gordon Staser lied to

Sheriff Dada to save his hide after assaulting his mother"—alluding to the fact that

Staser agreed to the controlled buys in exchange for having the charges against

him dropped.

Under the Fourth Amendment, a judge need only find "probable cause, a

standard well short of absolute certainty" before issuing a warrant, L.A. Cnty. v.

Rettele, 550 U.S. 609, 615 (2007) (per curiam), and the Ninth Circuit has upheld

---

[2] It's not clear from the habeas petition which search warrant Burgess claims his counsel should have challenged, but given that counsel never obtained the statement of probable cause for the October 12 search warrant, this court construes his remaining claims as challenging the warrant issued on October 19.

the use of confidential informants ("CIs") to meet this standard.  See, e.g., United

States v. Meling, 47 F.3d 1546, 1555 (9th Cir. 1995).

The facts in this case are similar to those in United States v. Jennen, 596

F.3d 594 (9th Cir. 2010), in which a defendant "contest[ed] the reliability of the

information obtained through the controlled purchase because the CI had been

arrested for crimes of dishonesty and was being compensated." Id. at 599.  In that

case, the Ninth Circuit found probable cause despite the CI's unsavory past

because there was additional information provided in the affidavit that "the CI had

'assisted . . . in past investigations that resulted in the arrests and convictions of

subjects dealing in controlled substances' and that 'this CI has been proven

reliable.'" Id. (alteration in original).  Here, too, the affidavit provided information

that the CI was a "reliable informant" who had "provided information on three

cases . . . and participat[ed] in the controlled purchases of illegal substances from

drug offenders."  Thus, the information regarding the two controlled buys was

sufficient to establish probable cause, and so counsel was not ineffective for failing

to challenge the warrant.

Burgess also claims his attorneys should have challenged the search because

he believes that the officers began searching before the warrant was executed.  He

points to what appears to be a partial police report, which states that "at approx.,

[3 p.m.], on scene officers were notified by radio that the search warrant for the Burgess/Wilkey property had been signed and that we were to start searching the property." The search warrant, however, wasn't signed until 3:58 p.m. Nonetheless, given that the unknown officer's timeline was "approximate," and that Agent Gordon's report stated that they did not start searching until 3:58 p.m., Burgess cannot show he would likely have succeeded on a motion to suppress. Thus, the state court's denial of this ineffective assistance claim was not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

Burgess also claims counsel was ineffective for failing to challenge the search warrant as "overbroad." The warrant permitted the officers to search for "[m]arijuana in the form of leaves, seeds, buds, flowers, stems and plants [and p]araphenalia commonly associated with the storage, cultivation, processing, sale and use of marijuana and narcotic paraphernalia." The warrant in this case satisfied the Fourth Amendment's particularly requirement because the language did not permit "a general, exploratory rummaging in a person's belongings." United States v. Sears, 411 F.3d 1124, 1127 (9th Cir. 2005) (internal quotation marks omitted). And the Ninth Circuit has upheld a similar warrant that authorized the seizure of "any dangerous drugs and drug paraphernalia," despite its

page 13

failure to offer any guidance as to what constitutes paraphernalia.  United States v.

Mann, 389 F.3d 869, 872, 878 (9th Cir. 2004) (internal quotation marks omitted).

Burgess cannot show he was prejudiced by counsel's alleged failure to challenge

the warrant on this ground.

Burgess additionally contends that the use of a form search warrant led to

"irregularit[ies]" that violate unspecified constitutional rights.  But, as discussed

above, the warrant was supported by probable cause and sufficiently

particularized, so the fact that the judge may have used a standardized form does

not render it unconstitutional.  Cf. United States v. Vesikuru, 314 F.3d 1116, 1118

(9th Cir. 2002) (noting that "search warrants using preprinted forms" are

"commonly employed").

Counsel is not required to file a meritless motion to suppress.  See Lowry v.

Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  Because petitioner cannot show that any

such motion was likely to succeed, the state court was not unreasonable in denying

his claim.

2.  Failure To Make Vindictive Prosecution and Due Process Claims

Burgess also contends that his counsel rendered ineffective assistance

because they failed to argue that the district attorney's office engaged in vindictive

prosecution and that his trial violated due process and was unreasonably delayed. His argument is convoluted and difficult to understand, but he seems to argue that the police officers involved in his case were corrupt, "Psychopath[ic]" and threatened him; that he was targeted for unjust prosecution as retaliation for speaking out against the candidate for sheriff; that the county withheld information about the confidential informant; and that the prosecutor delayed prosecution in his first case and added new charges because he had refused to accept a plea agreement.  Burgess alleges that he "instructed [his attorneys] to interview all witnesses, and prepare a defense that would show the State of California didn't conduct a facts gathering expedition in a timely fashion."  But the record belies any such ineffectiveness claim, as his trial attorneys actually filed a motion on precisely these grounds.  In arguing the motion, counsel explained that "our motion has two grounds . . . both under due process; one being unreasonable delay, and the other being vindictive prosecution."  At the motions hearing, his attorneys attempted to call a private investigator to testify that Burgess was prejudiced by the delay and the additional charges.  Burgess testified that his recollection of events critical to his defense may have gotten worse, and that the newly added claims prejudiced his defense.  Burgess cannot attempt to relitigate claims he's already lost by framing them as ineffective assistance of counsel claims.

Cf. Battaglia v. United States, 428 F.2d 957, 960 (9th Cir. 1970).  Because

Burgess's attorneys vigorously pursued this claim, we cannot say that the state

court's denial of his ineffectiveness claim was unreasonable.

     3.  <u>Failure To Investigate and Make a Marijuana Care Provider Defense</u>

     Burgess contends that his trial attorneys "failed to provide [him] with a

marijuana care provider's defense."  Burgess's close friend, Breitegger, testified at

trial that Burgess is her primary caregiver, and that he was holding her marijuana

for her because she had a court appearance.  Burgess also claims that his status as a

marijuana care provider "was common knowledge to the associates of Petitioner"

and that he could therefore have ten different people "come to court and testify" on

his behalf.  But California's Compassionate Use Act provides a defense only to

crimes of possession and cultivation under California Health & Safety Code

§§ 11357 and 11358, whereas five of petitioner's convictions were for the more

serious charges of possession for sale and sale of marijuana under California

Health & Safety Code §§ 11359 and 11360 respectively.  See Cal. Health & Safety

Code § 11362.5(d).  Counsel could reasonably have made a strategic decision not

to present the defense for the simple possession charge because it would be at odds

with the defense for the other charges, to which the Compassionate Use Act would

not apply.  <u>See</u> <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. 510, 553 (2003).  Furthermore, in light

of the firearms and amount of cash found in Burgess's home, Burgess cannot show

that a marijuana care provider defense was likely to succeed, and therefore cannot

show prejudice.

    4.  <u>Miscellaneous Claims</u>

    Burgess alleges that the jury foreman "was telling everybody [else on the

jury] that the Petitioner was guilty before all of the evidence was heard."  But

Burgess doesn't allege that any speculation was based on the jurors' consideration

of evidence extrinsic to the trial, so he cannot show that, had his counsel raised the

issue, it would have likely changed the outcome of his case.  <u>See</u> <u>Raley</u> v. <u>Ylst</u>,

470 F.3d 792, 803 (9th Cir. 2006).

    Burgess next alleges that his attorneys failed "to gather facts that Officer

Phil Johnston told Mr. Woods that he was in possession of an au[dio]-recording"

of the arranged drug transactions between Staser and Burgess.  But Burgess

doesn't allege that this recording would reveal anything exculpatory or explain

why the prosecution would have hidden such evidence instead of using it against

him.  Further, Agent Johnston testified at trial that there was no recording of the

buys because he was concerned Burgess might be able to detect a wire.  Given this

factual dispute, a conclusion that no such tape existed would not be "an unreasonable determination of the facts in light of the evidence presented."  28 U.S.C. § 2254(d)(2).  Moreover, Burgess alleges that his first attorney "requested copies of the au[dio]-recording and was informed that [they] never existed."  Thus, Burgess cannot show that his second counsel would have been any more successful in trying to get the alleged tape such that he would be prejudiced by their failure to do so.

Burgess further alleges that his counsel was ineffective because Agent Johnston "advised Mr. Staser to break the law or impede the defense investigation."  But Burgess does not provide any details or evidence to support this conclusory allegation.  See Hendricks v. Vasquez, 908 F.2d 490, 491 (9th Cir. 1990) (noting that a district court may dismiss a claim "where the allegations in the petition are 'vague [or] conclusory' or 'palpably incredible'" (quoting Blackledge v. Allison, 431 U.S. 63, 75–76 (1977))).  The record reflects that Burgess's counsel made adequate attempts to meet with Staser to prepare his defense.  On counsel's motion, the court ordered the state to produce Staser, and stated that it would be up to Staser whether or not he wanted to talk to the defense. Cf. United States v. Tornabene, 687 F.2d 312, 314, 316 (9th Cir. 1982).  Further, counsel was able to present an adequate cross-examination of Staser, questioning

him about the charges being dropped in exchange for his testimony, his prior convictions, his relationship with Burgess and how much he went over his testimony with the DA.  Thus, the state court was not unreasonable in denying Burgess's ineffective assistance of counsel claim on this ground.

Burgess also alleges that "the state couldn't prove the burden of two drug sales on the word of Gordon Staser."  This was an explicit ground of Burgess's direct appeal to the California Court of Appeal.  In rejecting this claim, the court recounted Burgess's argument stating, "[c]iting a series of cases dealing with drug purchases by police informants, defendant contends that in this case, as in those cases, 'there was a fatal gap in the evidence' that precluded his convictions on these dates."  <u>Burgess</u> v. <u>Stout</u>, No. NCR57403, at 3 (Cal. Ct. App. 2003).  Burgess cannot now claim that counsel was ineffective simply because the argument lost.

Burgess claims that his attorneys "failed to lay a proper foundation to submit all of the defense exhibits into evidence to be considered by the jury." Given the overwhelming evidence against him, however, it's unlikely that the admission of two police reports, which were to be used to impeach Agent Johnston's credibility, would have changed the jurors' minds.  Therefore, Burgess cannot show that he was prejudiced.

page 19

Burgess also requests a writ of coram nobis, but the All Writs Act cannot be used as a substitute for habeas corpus.  See Matus-Leva v. United States, 287 F.3d 758, 761 (9th Cir. 2002); United States v. Valdez-Pacheco, 237 F.3d 1077, 1079 (9th Cir. 2001) (noting that common law writs such as coram nobis survive "only to the extent that they fill 'gaps' in the current systems of postconviction relief").

Burgess alleges that his appellate counsel was ineffective, but he does not present any evidence of ineffectiveness independent of trial counsel's alleged errors.  Because the state court was not unreasonable in determining that trial counsel was effective, it follows that appellate counsel was not ineffective for failing to raise these issues or for failing to bring a related ineffectiveness claim on direct review.

*          *          *

A review of Burgess's long and convoluted habeas petition has not revealed that the state court's denial of his ineffective assistance claims "resulted in a decision that was contrary to clearly established Federal law" or was "based on an unreasonable determination of the facts."  28 U.S.C. § 2254.  Because his claims are meritless, his request for an evidentiary hearing and the petition are denied.  Further, the court finds that Burgess has not made a substantial showing of the denial of a constitutional right, so a certificate of appealability will not issue.  See

page 20

28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b); <u>Miller-El</u> v. <u>Cockrell</u>, 537 U.S. 322,

336 (2003).

**PETITION DENIED.**

December 9, 2010

_____

**ALEX KOZINSKI**

Chief Circuit Judge
Sitting by designation